IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRUCE LEBEAU,<br><br>    Plaintiff,<br><br> v.<br><br>SORL AUTO PARTS, INC., XIAO PING ZHANG, XIAO FENG ZHANG, SHU PING CHI, YU HONG LI, HUI LIN WANG, JIN BAO LIU, JIANG HUA FENG, XIAO LIN, and BINGHUA FENG,<br><br>    Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

    Plaintiff Bruce LeBeau ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by SORL Auto Parts, Inc. ("SORL" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning SORL and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against SORL and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Ruili International Inc. ("Parent") (the "Proposed Transaction").

2. On November 29, 2019, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Parent and Ruili International Merger Sub Inc. ("Merger Sub," and together with Parent, "Ruili"), pursuant to the which the Company's shareholders will receive $4.72 in cash for each share of the Company's common stock owned (the "Merger Consideration").

3. Ruili was formed on behalf of a consortium consisting of of Xiao Ping Zhang, the Company's Chairman and Chief Executive Officer ("CEO"), Shu Ping Chi and Xiao Feng Zhang, directors of the Company, and Ruili Group Co., Ltd. ("Ruili Group") (collectively, the "Consortium"). The members of the Consortium (excluding Ruili Group) own approximately 58.83% of the outstanding common stock of the Company.

4. On March 3, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against SORL and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed

Transaction unless and until the material information discussed below is disclosed to SORL shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

7. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District. In addition, the Company's stock trades on the NASDAQ Global Select Market ("NASDAQ"), which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a common shareholder of SORL.

10. Defendant SORL is a company incorporated under the laws of Delaware with its principle executive offices located at No. 2666 Kaifaqu Avenue, Ruili Industry Area, Rui'an

City, Zhejiang Province 325200, People's Republic of China. The Company's common stock trades on the NASDAQ under the symbol "SORL."

11. Defendant Xiao Ping Zhang is and has been the Chairman of the Company's Board at all times during the relevant time period.

12. Defendant Xiao Feng Zhang is and has been a director of SORL at all times during the relevant time period.

13. Defendant Shu Ping Chi is and has been a director of SORL at all times during the relevant time period.

14. Defendant Yu Hong Li is and has been a director of SORL at all times during the relevant time period.

15. Defendant Hui Lin Wang is and has been a director of SORL at all times during the relevant time period.

16. Defendant Jin Bao Liu is and has been a director of SORL at all times during the relevant time period.

17. Defendant Jiang Hua Feng is and has been a director of SORL at all times during the relevant time period.

18. Defendant Xiao Ling is and has been a director of SORL at all times during the relevant time period and is a member of the Board's special committee (the "Special Committee").

19. Defendant Bing Hua Feng is and has been a director of SORL at all times during the relevant time period and is a member of the Special Committee.

20. The defendants referenced in paragraphs 11 through 19 are collectively referred to herein as the "Individual Defendants."

21.     The Individual Defendants, along with Defendant SORL, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

22.     Incorporated on March 24, 1982, SORL Auto Parts, Inc. is a Delaware corporation. Through its 90% ownership of the Ruili Group Ruian Auto Parts Co., Ltd., a Sino-Foreign joint venture (the "Joint Venture"), the Company develops, manufactures and distributes automotive brake systems and other key safety related auto parts to automotive original equipment manufacturers, or OEMs, and the related aftermarket both in China and abroad. The Company's products are used in different types of commercial vehicles, such as trucks and buses. Automotive brake systems and other key safety related auto parts are critical components that ensure driving safety.

### The Company Announces the Proposed Transaction

23.     On November 29, 2019, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

SORL Auto Parts Enters Into Definitive Merger Agreement for "Going Private" Transaction

November 29, 2019 08:45 ET | Source: SORL Auto Parts, Inc

ZHEJIANG, China, Nov. 29, 2019 (GLOBE NEWSWIRE) -- SORL Auto Parts, Inc. (NASDAQ: SORL) ("SORL" or the "Company"), a leading manufacturer and distributor of automotive brake systems as well as other key safety-related auto parts in China, today announced that it has entered into an Agreement and Plan of Merger (the "Merger Agreement") with Ruili International Inc. ("Parent"), a Delaware corporation and formed on behalf of a consortium consisting of Mr. Xiao Ping Zhang, the Company's Chairman and Chief Executive Officer, Ms. Shu Ping Chi and Mr. Xiao Feng Zhang, directors of the Company, and Ruili Group Co., Ltd. (collectively, the "Consortium"), and Ruili International Merger Sub

Inc. ("Merger Sub"), a Delaware corporation and a wholly-owned subsidiary of Parent.

Pursuant to the Merger Agreement, subject to the satisfaction or waiver of all of the conditions to closing:

- Merger Sub will merge with and into the Company, with the Company will thereafter continue as the surviving corporation and a wholly-owned subsidiary of Parent (the "Merger"); and
- at the effective time of the Merger, each share of common stock of the Company issued and outstanding immediately prior to the effective time will be automatically canceled and converted into the right to receive US$4.72 in cash (the "Merger Consideration"), without interest, except for (i) shares of common stock beneficially owned by members of the Consortium or their affiliates, which will be cancelled for no consideration, and (ii) shares of common stock owned by stockholders who have validly exercised and not effectively withdrawn or lost their rights to dissent from the Merger pursuant to Section 262 of the General Corporation Law of the State of Delaware, which will be cancelled at the effective time of the Merger for the right to receive the fair value of such shares determined in accordance with the provisions of Section 262 of the General Corporation Law of the State of Delaware.

The Merger Consideration of US$4.72 per share of common stock represents approximately a 26.2% premium over the closing price of the Company's common stock as quoted by NASDAQ Global Select Market (the "NASDAQ") on April 24, 2019, the last trading day prior to the date that the Company received a non-binding "going private" proposal from the Consortium. The Merger Consideration also represents an increase of approximately 10.8% over the US$4.26 per share initially offered by members of the Consortium in their initial "going-private" proposal on April 25, 2019 and a premium of approximately 39.2% over the Company's closing price of US$3.39 per share of common stock on November 27, 2019, the last trading day prior to this announcement.

As of the date of the Merger Agreement, the members of the Consortium other than Ruili Group Co., Ltd., beneficially own in the aggregate approximately 58.83% of the total outstanding common stock of the Company and have agreed to vote the shares of common stock beneficially owned by them in favor of the Merger.

The Board of Directors of SORL, acting on the recommendation of a special committee of independent and disinterested directors (the "Special Committee"), unanimously approved the Merger Agreement and the transactions contemplated by the Merger Agreement, including the Merger, and resolved to recommend that the Company's stockholders vote to authorize and approve the Merger Agreement and the and the transactions contemplated by the Merger Agreement, including

the Merger. The Special Committee, which is composed solely of independent directors of the Company who are unaffiliated with any member of the Consortium or management of the Company, exclusively negotiated the terms of the Merger Agreement with the Consortium with the assistance of its independent financial and legal advisors.

The Merger, which is currently expected to close during the second quarter of 2020, is subject to various closing conditions, including the adoption of the Merger Agreement by the Company's stockholders. Pursuant to the Merger Agreement, adoption of the Merger Agreement and the transactions contemplated by the Merger Agreement, including the Merger, by the Company's stockholders requires the affirmative vote of (i) the holders of at least a majority of the Company's outstanding shares of common stock and (ii) the holders of at least a majority of the Company outstanding shares of common stock other than the shares of common stock held by members of the Consortium. The Company will call a meeting of stockholders for the purpose of voting on the adoption of the Merger Agreement and the transactions contemplated by the Merger Agreement as soon as practicable. If completed, the Merger will, under laws of the State of Delaware, result in the Company becoming a privately-held company and the Company Common Stock would no longer be listed on the NASDAQ.

Duff & Phelps, LLC is serving as financial advisor to the Special Committee, and Gibson, Dunn & Crutcher LLP is serving as legal advisor to the Special Committee. Locke Lord LLP is serving as legal advisor to the Company.

O'Melveny & Myers LLP is serving as legal advisor to the Consortium.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

24. On January 2, 2020 (and further revised on March 3, 2020), the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

25. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's

shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Duff & Phelps' Financial Opinion**

26. The Proxy Statement contains the financial analyses and opinion of Duff & Phelps LLC's ("Duff & Phelps") concerning the Proposed Transaction, but fails to provide material information concerning such.

27. With respect to Duffy & Phelps' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal year financial metrics observed and utilized by Duff & Phelps in the analysis; and (ii) the inputs and assumptions used by Duffy and Phelps to derive the discount rate range of 12.00% to 13.00%.

28. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

29. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## Material False and Misleading Statements or Material
## Misrepresentations or Omissions Regarding the Background of the Proposed Transaction

30. The Proxy Statement contains information concerning the background of the Proposed Transaction, but fails to provide material information concerning such.

31. The Proxy Statement fails to disclose whether any potential suitors expressed interest in a potential transaction with SORL between the time of the "2015 Proposal" and the "Proposal."

32. The Proxy Statement fails to disclose Defendants' basis for appointing Xiao Lin and Bing Hua Feng to the Board on May 20, 2019 in response to the Proposal. Further, the Proxy Statement fails to disclose the basis for appointing Xiao Lin and Bing Hua Feng to the Special Committee, including the reasons for the decision and qualifications of the candidates.

33. Lastly, the Proxy Statement fails to disclose the timing and nature of all communications regarding the post-transaction employment and/or directorship of the Company's officers and directors.

34. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

40. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading.

The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

41. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

42. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

43. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

44. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

# COUNT II

## (Against the Individual Defendants for
## Violations of Section 20(a) of the Exchange Act)

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of SORL within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of SORL, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

49. In addition, as set forth in the Proxy Statement sets forth at length and described

herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 13, 2020                                          Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, PC**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*